Good morning, and may it please the court. I am George Anthony Long, and I represent Zhang Ming Yang, who appeals her conviction in sentencing on charges of sex trafficking, travel fraud, Man Act violations, and conspiracy. At this time, I would like to take 15 minutes to present Ms. Zhang's argument. Five minutes will be for the co-defendant's counsel, Mr. Pixley, and I would like to reserve three minutes for our rebuttal. Now, this court. You don't have that much time. Excuse me? You don't have that much time. You know that if you take 15 minutes and reserve three minutes, you only have 12 minutes. Excuse me, I'm sorry. I meant I only have 12 minutes correct, and then three minutes for 15 altogether, and then three for rebuttal. Now, this court has consistently held that the relationship between the United States and the Commonwealth of Northern Mariana Islands is unique. The circuit also holds that the covenant, which is a document which abounds in specificity, is the sole basis for determining the United States authority concerning the Commonwealth. Now, the covenant consists of 10 articles which define the political relationship between the United States and the Commonwealth. And certain of these 10 provisions are deemed fundamental. Fundamental meaning that without their inclusion, then the covenant would not have come into existence. And one of the major components of the covenant made fundamental article is Article 5, of which Section 501A is a major component. Now, when we notice the Section 501A, it extends some, but not all, constitutional provisions to the Commonwealth. Now, in Fleming, this court reasoned that the drafters of the covenant fully considered each constitutional amendment and article in determining which ones would be included in 501A and thus extended to the Commonwealth. And on that basis, the court also determined that the omission of a constitutional provision was a deliberate decision or deliberate determination based upon that careful consideration. Now, in Magana, this court noted that the Commerce Clause, the Territorial Clause, and the Supremacy Clause were all omitted from Section 501A. Were all what? Omitted. Omitted. Omitted. Now, this omission is significant in light of Fleming's conclusion that the drafters fully considered each constitutional provision in determining which ones to include in 501A. Now, this brings us to the major issue in Ms. Jang's appeal. Jang contends that since the Commerce Clause was not extended to the Commonwealth, then her conviction cannot stand because the jurisdictional element of the substantive crimes of which she was convicted all required proof of a nexus to interstate or foreign commerce. Now, Jang's position on this point is that I'm sorry, that just doesn't compute to me. Will you say that again? Your point with respect to the applicability of the Commerce Clause is simply that because the Commerce Clause isn't mentioned in the Covenant, you can't prove a nexus to interstate commerce? Well, I don't What would that have anything to do with proving that it involved interstate commerce? You don't have to have the Commerce Clause for that. Well, to an extent, Your Honor, we take the position sort of as from this Court's reasoning in Fleming. Well, just come back and I'm just picking up on what you just said. Okay. Yes, Your Honor. I'm trying to make it compute. Is that what you said? We were saying that since the Commerce Clause was not extended to the Commonwealth. Yes. Okay. Meaning that the Federal Government, the Commerce Clause is a regulatory by which the Federal Government can regulate or essentially federalize a purely local crime. Yes. But what you said was the consequence in this case is that you could not prove a jurisdictional element, which is a nexus to interstate or foreign commerce. Well, in this case, our position is the government did not prove it. And we also said to them. Okay. So you're saying it didn't prove it. So I'm saying what does the applicability of the Commerce Clause have to do with being able to prove a nexus to foreign commerce? Well, I mean, that could exist without the Constitution. Well, Your Honor, as we understand, foreign commerce basically means commerce, the power of the Federal Government to regulate commerce between a point within the United States and a foreign country point outside of the United States. Now, if that power does not exist, if the United States cannot regulate that commerce, then, for instance, the commerce between the Commonwealth and China or the movement of people and goods between the Commonwealth and China is not subject to federal regulation or federal control. And it cannot be relied on to federalize, which is otherwise a purely local crime. Okay. So what is your argument that the Commerce Clause can't be relied upon in order to say that Sections 1591A and the Mann Act don't apply to the Northern Mariana Islands, or is your position that you can't possibly prove up the nexus without the Commerce Clause? Basically, what we're saying is that you can't prove up the nexus without the Commerce Clause. How come? Because with the Commerce Clause, for it to be applicable at this point, then you would have to incorporate it through or make its applicability through the statute itself. And Fleming says you cannot do that. Fleming basically looked at whether the 11th Amendment component of 1983, which is a statute that applied to the Commonwealth, whether that constitutional component applied. If the Act didn't take place in some kind of commerce, never mind the Constitution, if this Act did not take place in commerce, where did it occur? Well, our point is that it wasn't a commerce that the United States could rely on to federalize the crime. For instance, if this had been an Act that took place between Russia and China, it would not be a federal crime. And our position is that since the Commerce Clause does not apply to the Commonwealth, then you have the same result. It is an Act that took place between the Commonwealth and another foreign entity. And the United States absolutely has no control or authority to regulate that commerce. They cannot rely on that to federalize the crime. Counsel, what does Section 105 of the Covenant do to your argument? How does that affect your argument? Section 105? Section 105 basically means that the, says that the federal government has some power to enact laws that affect the Commonwealth of Northern Maryland Islands. Why wouldn't that provide authority for the United States to enact criminal laws that affect people in the Northern Mariana Islands? We don't say that it precludes the United States from enacting laws that affect the Northern Mariana Islands. Our point is that, for instance, just like in Fleming, the statute applied, 1983 applied, that was not in dispute. Dispute was, is whether the constitutional component of that statute could be applicable in the Northern Mariana Islands. And this Court said no, it couldn't, because Covenant Section 501 didn't extend the 11th Amendment to the Commonwealth. You couldn't read that constitutional provision into the statute. So therefore, they excise that constitutional provision from the statute as it applies to the Commonwealth. That's the point that we're making. And that's the point that we stress here, is that the constitutional provision as a component of this statute has to be excised out, as in Fleming, because the constitutional provision was not included in Section 501A. Because in Fleming, the Court recognized that, well, 1983 applies, but it doesn't apply as it does in the States, because 501A did not include the 11th Amendment. So in essence, we're saying, yes, you can say that the statute applies, but this constitutional component has to be excised out, because it was not included in 501A. Otherwise, as this Court recognized in Fleming, you're backdooring a constitutional provision, making it applicable to the Commonwealth, when it was not specifically included in a well-crafted and defined document. And you cannot backdoor it, because it reduces the significance of Section 501A. Now, to the extent that if this Court determines that the Commerce Clause is applicable, that the government could prove a nexus to commerce in this case, and we feel that Ms. Yang is still entitled to a reversal of her conviction on the grounds that her, on the grounds of the district court's exclusion of the video evidence, what we contend helps establish her, one of her principal defense theories is that Ms. Chang and Ms. Yang were knowingly and willingly, knowingly and willingly traveled to the Commonwealth to engage in the commercial sex industry, and they wouldn't yield. The district judge allowed testimony by both of them that they, in fact, did engage in acts of prostitution after they left the teahouse. Well, but the testimony, the testimony in itself, essentially by doing that, but then precluding the defense from lying on the video, basically robbed the defense from being able to present the effectiveness of the defense. For instance. A, doesn't show acts of prostitution. B, they admitted it. And C, it occurred after the fact, so it can't shed very much, if any, light on their state of mind when they were in China and left for Saipan, can it? Well, yes, it does, because these acts occurred within two weeks after Yang was arrested, and if they were claiming that they were forced and coerced with the video shows, it's that they were knowingly, willingly, freely and happily engaging in this activity. Which they freely admitted on the stand. Correct. And we say that that is for the jury to decide as to what their state of mind was and their purposes for coming to the Commonwealth, because that shows, and that supports the defense theory of that's what they were intending to do. Because the government cannot limit the effectiveness and the force of defense evidence by merely saying, okay, we admit and concede. Just like the defense can't limit the effectiveness of evidence put on by a prosecution, in its case, by saying, we concede a certain point. But the court can determine that no additional evidence is relevant to prove the point or needed to prove the point, if the point's already been adequately made. Doesn't the district court judge have that discretion to determine when enough is enough, in terms of the evidence that's been admitted on a certain issue? Well, the district court does have discretion, but then the district court can also abuse its discretion and by robbing the defense of the full force, because there's a difference between hearing somebody say, well, yes, I will engage in prostitution, as opposed to actually seeing it. And then being able to judge the credibility of a person based on what they see, as opposed to what they hear. Because it's a saying, old saying go, pictures are worth thousands of words. And in essence, what they're saying is that a picture can convey a meaning or story more effectively than words. And what we were effective, what we were done was deprived of our opportunity to effectively present a defense. Thank you very much. I appreciate the time. Okay. Thank you, Mr. Long. Mr. Pixley. Good morning. Good morning, Your Honors. I'm sorry about my voice. Steven Pixley. I represent Liu Changda. It pleases the Court. I know the Court's read the record. This case, as the Court knows, is largely determined by the credibility of the two alleged victims in the case. And after their testimony, the district court, well, the prosecution called Agent James Berry to the witness stand, and he was allowed to essentially repeat testimony of the two alleged victims over the objection of counsel, defense counsel. And the judge ruled that under 801D-1B, that Agent Berry could, in fact, testify as to various things that were said to him on June 15, 2005. The Court's read our brief, and essentially it's our position that on that date when these statements were made, the two witnesses, the two alleged victims, had multiple reasons to falsify testimony. I just want to remind the Court that the way this case got started is a little bit unusual. It isn't a case where the government came in and did a sting operation or did an investigation. These two victims, or alleged victims, actually went to the, initially to the federal ombudsman in Saipan and complained about wages. They were referred to the U.S. attorney and to the FBI and then were questioned by Agent Berry. At that time, they knew that they had engaged in prostitution, which was illegal. Obviously, they said that they were forced into it. They knew that they'd executed false documents to enter Saipan. They were obviously upset with their employer because of nonpayment of wages. They were also influenced by Ms. Wang, who, as you will see from the record, had a fight with Mr. Long's client, ended up in jail, and also had a monetary dispute. All those reasons, multiple reasons, existed when the, on June 15, 2005. And as the Supreme Court said in Toomey and as this Court said in the Miller case, if the reasons to fabricate existed at the time the statements were made, then the statements would be inadmissible under 801D1B. But that's a call that's made by the district court judge who's there. He sees the demeanor of the witnesses. He's able to factor all of that in. Isn't he better able to make that determination than we are from a cold record? Well, he has good discretion, obviously. And Mr. Long indicated that discretion could be abused. We think it was in this case because of the importance of the credibility of the witnesses and the fact that, as the Court said in Toomey, the U.S. Supreme Court, that was a child abuse case, and the Court reversed, and the Court said that it was sort of a weakly asserted motive for falsifying testimony. In that case, that the young girl wanted to live with her mother, and the Court said that was used to allow a parade of witnesses to go on the witness stand who are very credible to repeat the testimony. Here, we didn't have a parade of witnesses, but we had Agent Berry, a respected FBI agent who got up and basically repeated everything that was said by these two witnesses who were largely discredited at that point. And we believe that it was erroneous for the trial judge to allow it. Thank you. Get that microphone up high there. Good morning, Your Honors, and may it please the Court. Michael Rotker from the Department of Justice on behalf of the Appellee of the United States of America. I'd like to focus, as Mr. Long did, on what I perceive to be the primary issue in this case about whether or not the statutes are applicable to and within the CNMI. I have to confess, as did Your Honor Judge Reimer, that I was somewhat confused about the nature of the claim that's at issue here. As I tried to set forth in the brief, our understanding of the claim, and perhaps it's different than what Mr. Long's intention was, is simply a constitutional challenge. I don't think it had to do with evidentiary proof. I think what the premise, as I understood it, was to say, look, the CNMI is this kind of unique entity. It's kind of out there. It's beyond Congress's legislative authority under either Article I or Article IV of the Constitution. As he said this morning, it's no different than if this Congress was China to Russia, that China to the CNMI is qualitatively the same. So I understood it to be a constitutional challenge. And I understood the basis of that challenge to be Section 501A, as this Court interpreted it in the Fleming case. As I tried to explain in the brief, I think there are two basic flaws with the reliance on Fleming in 501A. The first problem that I see is that we fully appreciate and recognize, as we stated in the brief, that Fleming did say that 501A was intended to be exhaustive. With due respect to the Court, we simply think that that reasoning is incorrect. I don't think, I think if you look at the drafting history of the covenant, if you look at all the external information surrounding the negotiation of the covenant, I think it's quite clear that actually 501A was designed to serve a much more modest purpose, in that it was designed to confer individual rights of citizenship on the people of the Marianas. It was in effect a bill of rights, because as the Court well knows, as the Supreme Court said in the Insular cases, the citizens of an unincorporated territory have no automatic constitutional rights. Counsel, even if we agree with you, aren't we bound by Fleming? You are bound by Fleming's holding, Your Honor, which is that the Eleventh Amendment doesn't apply. But with respect, I've cited the Court to this Court's decision in Osborne, which makes clear that as a matter of stare decisis, the Court is not bound by the reasoning of its prior precedents. And that, I submit, this is not an Eleventh Amendment case, so Fleming's holding is not implicated here. What the defendants, as I understand their argument to be, is they're saying, look, what's good for the goose is good for the gander. If the Eleventh Amendment wasn't mentioned, and therefore it was intended to be exhaustive, then expressio unius as to that, they're saying you should make the same argument as to the commerce and the territorial clauses. So it's your argument that we should try to separate the holdings of our cases from the reasoning of our cases and follow the holdings only, and not the reasoning? No. At the end of the day, that is the position. But let me just take a moment and explain why I think that's the case. That's a tough sell to me. I appreciate that, Your Honor. It was a tough sell for me intellectually. But the more I thought about it, the more it made sense. And let me try to persuade the Court why I think that does make sense. Look, in the overwhelming majority of cases, reliance on the reasoning of prior precedents is perfectly sensible, perfectly appropriate, and perfectly – it's not going to be contested. I mean, the reasoning is going to often make perfect sense. But what I submit to the Court is that at the end of the day, when the rubber hits the road, there are going to be rare and exceptional cases where you can look at the reasoning of a prior case that was used to reach the holding, and you can see on its face, as we submit as the case here, that the reasoning is just simply not supported. It's incorrect. And not only – I think in this case it's even more egregious, if I may say that, not just because it's incorrect, Your Honor, but because it would lead to what I think are – can only be described as absurd and bizarre results here. Because if you take Fleming's reasoning to its logical limits, it would have the perverse consequence, I think, of saying, well, the Covenant envisioned that Congress could legislate in certain areas explicitly. For example, the foreign affairs power. Yet the foreign affairs powers that Congress would rely upon are not set forth, so it would lead to this bizarre result where the Covenant envisioned that Congress could do something, yet taking Fleming's reasoning to its limit, well, that power is not enumerated in 501A, therefore Congress is impotent. Congress is unable to legislate in that area. So you're asking us to write an opinion saying that our colleagues engaged in bizarre reasoning and therefore we should disregard it? No, Your Honor. I didn't say that the reasoning was bizarre. My position was that the reasoning was incorrect and that if you take that reasoning to its logical limits, it would lead to absurd conclusions, with all due respect. But let me just back away. I'm not retreating from that position, and I think Osborne makes it very clear that the Court is not bound by the reasoning of its prior precedents. But I do want to just emphasize one other point. Even if the Court chooses, as Judge Rawlinson was suggesting, to follow Fleming's reasoning, you still get to the same bottom line here. And the reason you get to the same bottom line, and this was my second point, 501A contains a prefatory language that says except to the extent these provisions apply of their own force. Which means what? Not clear, Your Honors. If you'd like the long explanation, doctrinally here's what I think. The Insular cases say that the Constitution doesn't apply of its own force in an unincorporated territory, except to the extent those rights are fundamental. If you look at the drafting history of the Covenant, I think what 501A was getting at is to say, look, we want to give the citizens of the Marianas the rights to free speech, the right to be free of search and seizure, the right to due process. We don't want ambiguity about what is and is not a fundamental constitutional right of an individual to possess. So Congress legislatively through the negotiation process conferred these rights. Consistent with the individual rights focus, which I think I agree is in tension with Fleming, but if you accept for the moment that Fleming had an individual rights focus, then I think the otherwise provided of its own force language makes perfect sense. Because what they're doing is saying there may be other individual constitutional rights that apply of their own force. And therefore, this Covenant 501A doesn't preclude them from being made applicable even though they're not enumerated. So I think the other of its own force means other individual rights that are not enumerated can still be applicable because the Supreme Court itself has said in the Insular cases that even unenumerated constitutional rights can be made applicable. The point of 501A was to eliminate the ambiguity because we're really not sure which individual rights are so fundamental as to be applicable of their own force. That's why Congress, for example, in the Guamanian, if that's the right word, in the Guam Organic Act and the Virgin Islands Organic Act, Congress specifically had a provision in there titled Bill of Rights, and it very much tracks Section 501A in terms of the rights it confers. And that's why I think, and if you look at the drafting history, I think it makes very clear that 501A was intended to do the same thing for the citizens of the Marianas. Congress didn't want them to be viewed as second-class citizens who didn't have rights to free speech and rights to due process. But because it's not clear because of the Supreme Court's own cases, the Insular cases, what is and is not fundamental rights, they chose to just spell it out specifically. You have the right to privileges and immunities. You have the right to due process. So of its own force, I think — I'm sorry, Your Honor. Of its own force means individual constitutional rights. But I think if the ship has sailed, if the Court chooses to follow Fleming, then I think the question is presented, well, okay, we're going to start from the premise that 501A was intended to enumerate everything. And then the question is, well, okay, if everything's fair game, what applies of its own force? And I would submit, look, at the very least, at the very least, whatever else may be  I mean, I don't think that the territorial clause of Article IV has to be applicable. I mean, at some level, is it even — well, at some level, can the United States contract out of its ability to contract with respect to the territories, which is, in effect, what it would be doing, unless the territorial clause at least still applies? Yeah. And I think it's an interesting question about how far — and as Mr. Long said, look, the covenant is a unique relationship, and this Court has recognized it. You know, how we got to that process of negotiating, there's a lengthy history that describes how we got to that point. My — our position, I think, at the end of the day is the drafting history is unmistakably clear that all parties, including the MPSC, the Marianas Political Status Commission, the United States, everybody recognized that the territorial clause, at the very least, was a source of congressional authority. And to Your Honor Judge Rawlinson's question, Section 105 itself is predicated on the assumption that the territorial clause is going to apply. The whole point of Section 105 was to try to limit how far Congress could otherwise go, because as the Court knows, the territorial clause, when it's unqualified, would allow Congress to set up a local government, just as it did for Guam and for the VI. It gives Congress broader authority vis-à-vis the territories than it would have vis-à-vis the states. What the Marianas sought in the negotiations was to say, look, we're in a unique relationship. We don't want to be just Guam. We don't want to be a federal instrumentality. We want to have greater degree of independence and a greater degree of autonomy. And part of that process of negotiating, of back and forth, was that in 105, the CNMI negotiator, the Marianas Political Status Commission, negotiated to say, fine, you can use your territorial clause powers, but certain provisions of the covenant are deemed so important and so fundamental that they can only be exercised by the United States with the consent of the Marianas government, if you will. So it seems to me just unmistakably clear that everybody accepted and understood that at the very least the territorial clause was a source of legislative authority. How far Congress can go in contracting it out, I'm not sure, but I don't think that they've exceeded the bounds here. I think that this is, you know, perfectly consistent with the kind of regime established in the covenant. And I think it would, you know, as I tried to say respectfully, I don't believe that Fleming itself, the reasoning was bizarre. I think with respect, Fleming's reasoning was just simply overbroad. It went further than it needed to to reach that conclusion. It's quite possible that the Eleventh Amendment shouldn't apply to the CNMI. But what I suggest is the reason why it shouldn't apply is not because it's not listed in 501A. I believe, if my recollection is correct, that Puerto Rico, the First Circuit has said Puerto Rico doesn't have sovereign, doesn't have Eleventh Amendment immunity, but it has nothing to do with its omission from the, you know, Puerto Rican charter, if you will. So I guess to distill it down to its essence, I think you can fairly and faithfully say that Fleming reached the right result, but perhaps not necessarily for the right reasons. And if the Court wants to go down that road, we think that that is fundamentally — it is consistent with 501A's drafting history. But again, even if the Court wants to accept Fleming's reasoning and, you know, you get to the same result, because our view is that at the very least, the territorial clause must be one of those provisions that applies of its own force. And as the Third Circuit said in the Polychrome case, given the unparalleled breadth of the territorial clause, we think that Commerce Clause principles are implicit in the territorial clause. And Congress certainly — look, at the end of the day, this is a territory. Yes, it has a unique status and a unique relationship, but as the covenant itself admits, it is under U.S. sovereignty. And what the defendants are basically asking the Court to do is to ignore that point and to say, as Mr. Long did, that this is a matter of, you know, commerce between China and Russia. But it's not China and Russia. It's China and the United States territory. And the Federal Government must have some legislative authority to legislate vis-à-vis this kind of a territory. Because otherwise what you're doing, in effect, is you're carving out a large swath of Title 18 that's simply going to not apply to the Marianas. It's going to be a Federal crime-free zone to the extent that legislation is based on the commerce authority. And you're going to — you know, it would just — that's why I say with respect that the reasoning of Fleming taken to its limits would just lead to these bizarre conclusions and bizarre results that simply were not intended. If the Court has no further questions on that issue, I — my basic position on the two evidentiary points that were raised are — echo what Judge Rawlinson said, which are that these are classic discretionary calls for the district court. They may disagree with them. That's certainly their prerogative. But I don't see anything here that shows an abuse of that very broad discretion. And even if there was, for the reasons stated in the brief, we think that any error would have been harmless beyond a reasonable doubt. If the Court has no further questions, I'd happily submit back the balance of my time. Okay. Thank you, Your Honor. Thank you. This Court, in its decision in Areda v. The Commonwealth of Northern Mariana Islands, reaffirmed Fleming's ruling and reasoning, as Jane relies on in this appeal. So this Court can — our position is that that is the law of the circuit, and it cannot just be disregarded or cast away. Which case did you say reaffirmed? Areda. I think Areda v. The Commonwealth of Northern Mariana Islands, which was 331, Fayette Third, and I don't remember the exact page number, 690. And on that, the Court reaffirmed again. In that case, they were asked to overrule Fleming. Why? That Fleming's reasoning was no longer applicable. And the Court said we can't do it. And acknowledged that Fleming's reasoning was that the exclusion of the constitutional provision, Eleventh Amendment, basically was an intentional act and could not just be readily discarded. Now, what the government likes to do is wants this Court to focus on issues other than the present case and controversy before it in order to make its determination and ruling. And we submit that under this Court's reasoning, in the case of Hillbloom v. The United States, that is not correct. Because in Hillbloom, Hillbloom challenged certain about the powers of the United States towards the Commonwealth. And this Court said, well, we need a specific case in controversy. We can only decide the specific case before us. We can't deal in hypotheticals, speculations, which may or may not occur. But that's what the government wants this Court to do. The government wants this Court to say we cannot follow, you should not follow Fleming because of what may happen, because of what may happen in other circumstances, not because of this particular case. Well, I can't imagine anything that's too much broader than what you want the Court to say, which is that the United States just inadvertently wrote out its ability to legislate with respect to the northern Mariana Islands. They did not. I mean, that's extraordinary. Your Honor, they did not inadvertently rule out. What the United States did, according to the circuit, is that the – it was an intentional provisions of the California Constitution. Okay. So your position is that the United States has no ability to legislate in any respect with respect to the northern Mariana Islands, including legislation which was already in effect at the time of the covenant and which the covenant itself accepts. No, Your Honor. Our position is, as this circuit has ruled, is that the covenant is the – Yes, Your Honor. How? Our position is that we are not saying the United States has ruled out any of its ability to legislate for the Commonwealth of Northern Mariana Islands, because as this circuit is held, that authority is governed solely by the covenant. For instance, if the covenant gives justice to the – Yes, I understand. So the covenant says that any legislation that was effective before the covenant was effective applies. Correct. Right? So long as it's generally applicable to the States and to Guam. All right. And it applies. Which two of these acts are. All right? Two of these acts are. One isn't – the one that is not, the sex trafficking statute, we would, in the normal event, apply a Richards balancing test to it and sensibly conclude that the interest of the United States is extremely strong and doesn't interfere with the legitimacy and common interests of the Northern Mariana Islands. We agree, Your Honor. Okay. So you're saying we nevertheless have to say that the United States had no ability to do that, right? No ability to apply the Mann Act or the Sex Trafficking Act to the Northern Mariana Islands. No, Your Honor. What we're saying is, is that there's a distinction between the source of whether the statute applies, as in Fleming, and whether a constitutional component. For instance, Your Honor. But the effect of what I said, I think, is the position, the effect of your position, is it not? No, Your Honor. We take it back, and I think it would be articulated clearly through the circumstance of Fleming. For instance, Fleming. Look, never forget Fleming, all right? What I'm trying to do is to focus on the effect of your position. Yes, Your Honor. Have I misstated the logical effect of your position? I believe so, Your Honor. Okay. So to what extent does either the Mann Act or the Sex Trafficking Statute continue to apply to the Northern Mariana Islands? Well, Your Honor. Does it or doesn't it? It applies. The statutes themselves, the statutes themselves apply, just like the 1983 applied in Fleming. However, the component, which is one of the jurisdictional elements, Your Honor, the jurisdictional element alleged in this case, which is the commerce clause, that's where the issue lies, because, in other words, you're saying a statute can incorporate a constitutional provision that otherwise does not apply in the commonwealth. Fleming says you cannot do that. Okay. I got it. Thank you, counsel, both of you and all of you. The matter just argued will be submitted. And the Court will next hear argument in Lopez-Rodas. Thank you, Your Honor.
judges: Hug, Rymer, Rawlinson